# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1478

_____

United States of America,

        Appellee,

v.

Donnell Le-Ron Alston,

        Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
Western District of Arkansas.

_____

Submitted: September 24, 2010
Filed: December 6, 2010

_____

Before LOKEN, HANSEN, and BENTON, Circuit Judges.

_____

HANSEN, Circuit Judge.

A jury convicted Donnell Le-Ron Alston on each count of a two-count indictment for (1) knowingly possessing with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii); and (2) knowingly possessing with intent to distribute cocaine in violation of 21 U.S.C.

§ 841(a)(1). Alston appeals his convictions, arguing that the district court[1] erred by denying a motion to suppress the fruits of a purportedly illegal investigatory stop and by limiting the scope of cross-examination of a law enforcement officer at trial. Alston also appeals his sentences. We affirm.

I.

At the time of the events precipitating this appeal, Alston was on parole for a narcotics-related criminal offense. Before granting him parole, the State of Arkansas required Alston to agree to comply with certain conditions of release and to submit to certain restraints on his liberty. Among other conditions, Alston agreed not to associate with convicted felons or persons engaged in criminal activity, to obtain his parole officer's approval before staying away from his approved residence overnight, and to submit his person, residence, and motor vehicles to search and seizure at any time, with or without a warrant.

On the night Alston was arrested for the instant offense, police were initially investigating David Oteri. Oteri had failed to report to Arkansas Department of Community Correction Officer Craig Robie, the officer supervising his parole, and Officer Robie had also received information from the Fort Smith police suggesting that Oteri was distributing drugs at a hotel in Fort Smith.

Officer Robie accompanied police to the hotel and conducted surveillance. The officers witnessed Oteri depart from and return to the hotel twice—activity they believed to be consistent with the distribution of drugs. When the officers attempted to approach Oteri to question him, Oteri fled. After police caught and detained Oteri, they searched him and found methamphetamine and a large quantity of cash on his

---

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

person. Oteri admitted that he was involved in narcotics, and he told one of the officers "that he was involved with an individual that's in room 416 and knew this individual as DA." (Suppression Hr'g T. at 34.)

The officers conferred and could think of only one person with the initials "DA" historically known to be involved in narcotics in the Fort Smith area: Donnell Alston. A few years earlier, Officer Robie had supervised Alston as a parolee from a narcotics offense, and Officer Robie knew Alston was again on parole for another narcotics offense.[2]

Based on the foregoing, Officer Robie suspected Alston was in violation of the conditions of his release. The officers went to the hotel front desk and asked if Alston was a registered guest. They also inquired as to the identity of the registered guest in room 416. Room 416 was registered to Angela Groves, a person whose name had surfaced in previous narcotics investigations. As the officers were making their inquiries of the hotel clerk, Alston exited the lobby elevator and attempted to leave the premises.

The officers pursued Alston and detained him as he was nearing his automobile. Officer Robie acknowledged at the suppression hearing that Alston was not free to leave at this time. Officers searched Alston and found a large amount of United States currency on his person. Alston admitted that he had been staying in room 416 of the hotel.

Officer Robie went to search room 416 and was greeted at the door by Angela Groves, who confirmed that Alston had been staying in the room. She permitted the officers to search the room. Inside, officers found cocaine and cocaine base. Ms.

---

[2]A different Arkansas Department of Community Correction officer was supervising Alson at the time of the arrest precipitating this appeal.

Groves claimed the drugs belonged to Alston. Alston was arrested and transported to the police department.

At the police department, Officer Greg Napier advised Alston of his <u>Miranda</u> rights and interviewed him. Alston admitted that the drugs and paraphernalia in the hotel room were his and that he had been distributing them. Detective Napier did not make an audio or video recording of Alston's confession but instead took notes of the statement and wrote a report.

Alston was indicted in a two-count indictment, to which he pleaded not guilty. He filed a motion to suppress the fruits of his detention at the hotel. The motion was referred to a magistrate judge,[3] who recommended that the district court deny the motion. The district judge adopted the magistrate judge's report and recommendation,[4] and Alston's case was tried to a jury.

Alston's theory of defense was to call into question the veracity of the law enforcement officials involved in the case, especially Detective Napier, the officer who secured Alston's confession. Defense counsel attempted to cross-examine Detective Napier regarding whether he had previously lied to his superior officers about mistreating a prisoner in custody. The district court did not allow the line of questioning. Alston's counsel objected to the limitation of his cross-examination. Alston was convicted on both counts and subsequently sentenced to life in prison on count one, a concurrent twenty year sentence on count two, and a $5,000 fine. Alston appeals both the convictions and the sentences.

---

[3]The Honorable James R. Marschewski, United State Magistrate Judge for the Western District of Arkansas.

[4]Because the district court adopted the magistrate judge's report and recommendation in its entirety, we hereafter refer to the findings and conclusions of the report and recommendation as those of the district court.

-4-

## II.

Alston argues that the district court erred in denying his motion to suppress the fruits of his detention and search at the hotel. We review *de novo* the denial of a motion to suppress. United States v. Nichols, 574 F.3d 633, 636 (8th Cir. 2009). However, we review the factual findings underlying such denials for clear error. Id. The district court held that reasonable suspicion existed for police officers to detain Alston when they saw him exiting the hotel. As an initial matter, the Government argues that the police officers' initial encounter with Alston was not an investigatory stop or detention but merely a consensual encounter. Because our *de novo* review demonstrates that reasonable suspicion existed for the police to conduct an investigatory stop, we need not definitively determine the character of the initial encounter. We assume without deciding that the police detained Alston. Thus, we need only determine whether Alston's detention was based upon reasonable suspicion that he violated a condition of his parole.[5]

---

[5]Alston acknowledges that he was subject to lawful detention upon reasonable suspicion that he was violating the conditions of his parole. The Government does not argue that Officer Robie could detain Alston in the absence of reasonable suspicion that he was either violating the conditions of his parole or committing a crime. The parties' understanding of the applicable law appears to be correct. Arkansas Code § 16-93-206(a)(4) empowers the Arkansas Parole Board to "formulate all policies, rules, and regulations regarding parole." The Board has promulgated policies for supervision of parolees, and those polices require every parolee to abide by certain conditions of release. 158.00.1 Ark. Code R. § xv. Alston agreed to those conditions. One such condition advised Alston: "You must submit your person, place of residence, and motor vehicles to search and seizure at any time, day or night, with or without a search warrant, whenever requested to do so by any Department of Community Correction Officer." Id. § xv(10). The administrative policies and procedures allow such a search, "without a warrant based on probable cause, if the Department of Community Correction Officer has reasonable grounds for investigating whether a releasee has violated the terms of his/her release or committed a crime." Id. § xv. Under the rules "[t]he term 'reasonable grounds' does not mean that which would be necessary for probable cause. Rather, it means a reasonable

One such condition required Alston to obtain prior approval from his supervising officer to change his place of residence or to be away from his approved residence overnight. 158.00.1 Ark. Code R. § xv(3) ("Condition 3"). Another advised Alston: "You must not associate with convicted felons, persons who are engaged in criminal activity, or other persons with whom your supervising officer instructs you not to associate." Id. § xv(7) ("Condition 7"). The Government argues that Officer Robie had reasonable suspicion to believe that Alston violated both Condition 3 and Condition 7.

"Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time, the officer has a particularized and objective basis for suspecting wrongdoing." United States v. Hamilton, 591 F.3d 1017, 1022 (8th Cir.), cert. denied, --- U.S. ---, 2010 WL 2679367 (U.S. Oct. 4, 2010). Reasonable suspicion is a fluid concept that takes its substantive content from the particular context, and for that reason each case must be evaluated on it own facts. Ornelas v. United States, 517 U.S. 690, 696 (1996).

In this case, only minutes before seeing Alston exit the hotel Officer Robie had arrested another parolee. That parolee, David Oteri, had failed to report to Officer Robie, in violation of the terms of his parole. Oteri was suspected of distributing narcotics, was observed engaging in activity consistent with distributing narcotics, and fled from police when they approached. When police seized Oteri, he was in possession of narcotics and told officers he was "involved with" a person he knew as "DA" who was in hotel room 416. The law enforcement officers conferred and suspected that "DA" was Donnell Alston—the only person in the community with the initials "DA" whom officers knew had previously been involved in the narcotics trade. The officers also knew that the room was rented to Angela Groves, a name that had

suspicion that a releasee has committed a release violation or crime." Id. Even suspicionless searches of parolees are allowed by the Fourth Amendment if allowed as a condition of parole. Samson v. California, 547 U.S. 843, 856-57 (2006).

surfaced in previous narcotics investigations. Officer Robie had previously supervised Alston as a parolee and was aware that Alston was currently on parole for a narcotics-related offense. Officer Robie's experience had taught him that drug traffickers often use hotel rooms to distribute their product. While possessing all this knowledge, Officer Robie saw Alston exit the hotel. In the context of this case, Officer Robie had more than a general suspicion of wrongdoing. He reasonably believed that Alston was associating with an active drug dealer in violation of the conditions of his parole. In view of the foregoing, Officer Robie's suspicion was particularized and objectively reasonable.

Alston does not argue that police violated the Fourth Amendment *after* he told officers he was staying in room 416. Indeed, the facts that he had changed his residence and made an overnight stay without authorization are clear violations of Condition 3 of his parole, warranting officers to seize him and to conduct a search of him and his admitted residence, room 416. Additionally, room 416 was rented in Ms. Groves' name and she consented to law enforcement's request to search the room.

Alston argues that no support exists in the record for the finding that Oteri told officers that Oteri had received the narcotics found on Oteri's person from "DA." Our review of the record suggests that Alston is correct; there is no evidence in the record to support a finding that Oteri told police he received narcotics from Alston. Yet, any such error is harmless. As can be seen above, even in the absence of a finding that Oteri said Alston provided him drugs, there is sufficient evidence to support the district court's finding of reasonable suspicion that Alston was associating with persons engaged in criminal activity in room 416. Importantly, the erroneous finding of fact was immaterial to the determination of reasonable suspicion. Oteri was engaged in criminal activity whether he received the drugs from Alston or vice versa, and the evidence supports a finding of reasonable suspicion that Alston was associating with the criminally engaged Oteri, even if narcotics never changed hands between the two men. For this reason, the purported error cannot provide a basis to

-7-

reverse the district court.  <u>See</u> Fed. R. Crim. P. 52(a) ("Any error . . . that does not affect substantial rights must be disregarded.").

III.

Alston also argues that the district court erroneously limited his cross-examination of Detective Napier, as allowed by Federal Rule of Evidence 608(b). Prior to trial, the Government filed a motion in limine to preclude Alston's counsel from inquiring into Detective Napier's termination from the Fort Smith Police Department in November 2005.  Defense counsel believed that Detective Napier was fired for challenging a prisoner to a fight and then lying about it afterward.  The Government argued that the subject testimony was inadmissible under Federal Rule of Evidence 608(b) because it was not probative of Detective Napier's truthfulness or untruthfulness.  The Government also argued that the testimony would be inadmissible under Federal Rule of Evidence 403.  Two exhibits were attached to the motion.  The first exhibit was an order of the state district court that reinstated Detective Napier to his position.  The order makes no mention of Detective Napier's having lied about the incident.  The second exhibit is a letter from the acting police chief of the Fort Smith Police Department.  The letter notes that a review of Detective Napier's file indicated no incident concerning untruthfulness.  The district court granted the motion in limine, holding that the testimony would not be probative of Detective Napier's truthfulness and should be excluded under Rule 608(b).  The court also held that any probative value is substantially outweighed by the risk of prejudice and the testimony should be excluded under Rule 403.

When the Government called on Detective Napier to testify at trial, defense counsel asked the court to allow cross-examination regarding the termination. When the district court refused to entertain the testimony, defense counsel made an offer of

proof.[6] The court again refused to allow the proffered cross-examination. At the close of the evidence defense counsel noted his objection to the limitation, and the district court overruled the objection. Still later, Alston moved for a new trial due to the limitation of cross-examination. That motion was denied in a written order, again on both Rule 608(b) and Rule 403 grounds.

We will reverse the district court's limitation of cross-examination only where there has been a clear abuse of discretion and a showing of prejudice to the defendant. United States v. Beck, 557 F.3d 619, 620 (8th Cir.), cert. denied, 129 S. Ct. 2412 (2009). "Admissibility of prior misconduct which is probative of a witness' truthfulness is expressly entrusted to the trial court's discretion by Rule 608(b)." United States v. McClintic, 570 F.2d 685, 690-91 (8th Cir. 1978). Rule 608(b) provides:

> Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . .

"The purpose of the rule is 'to avoid holding mini-trials on peripherally related or irrelevant matters.'" King v. Ahrens, 16 F.3d 265, 269 (8th Cir. 1994) (quoting United States v. Martz, 964 F.2d 787, 789 (8th Cir.), cert. denied, 506 U.S. 1038 (1992)).

---

[6]Defense counsel offered: "That in 2005 or in 2006 he was fired because an interim chief thought that he lied about being reported by another officer that he took the cuffs off of a person and said, 'I'm going to let you fight me,' and I don't know how it got started, but he was dismissed where other officers were not. And I have had it related to me by other defense attorneys that this is a sign that he lied to his chain of command." (Trial T. at 278.)

"The Rule 403 balancing of probative value versus prejudicial effect is an integral step toward a determination of admissibility under . . . Rule 608(b)." Id. "In balancing the probative value and prejudicial effect, 'great deference is given to the district judge's determination, and express findings are not required.'" Id. (quoting United States v. DeLuna, 763 F.2d 897, 912 (8th Cir. 1985)).

Detective Napier's testimony relating Alston's confession was certainly important. Yet, while "confessions have profound impact on the jury," Arizona v. Fulminante, 499 U.S. 279, 296 (1991), such that a police officer's description of a confession is correctly subjected to intense cross-examination, Alston's confession was not the only evidence linking Alston to room 416 and the drugs. As described at length above, the other evidence in this case circumscribes the importance of Detective Napier's testimony. Additionally, the proffered hearsay evidence is not all that probative of Detective Napier's character for truthfulness, even if it is true that Detective Napier lied to his superiors (a finding we do not make). It is evidence of an isolated event of a different character from the one at issue here. There, Detective Napier allegedly lied to protect himself from punishment. Here, Detective Napier essentially allegedly invented a complex confession to secure a drug conviction. The difference in motive is clear, and that difference lowers the probative value of the evidence. See King, 16 F.3d at 269-70 (considering similarity of specific conduct proffered on cross-examination to facts of present case).

In addition to having only limited probative value, the proffered cross-examination would have created a danger of unfair prejudice. As the exhibits to the Government's motion show, Detective Napier was found to have engaged only in ridiculing or taunting a prisoner and was reinstated. As a sister circuit has recognized, when the previous allegations of misconduct leveled against a witness resulted in no sanctions or sanctions completely unrelated to the witness' character for truthfulness, the danger is great that a jury will infer more from the previous investigation than is fairly inferable. United States v. Novaton, 271 F.3d 968, 1006-07 (11th Cir. 2001),

cert. denied, 535 U.S. 1120 (2002). To have allowed the cross-examination would have resulted in the kind of mini-trial on a peripherally related matter that the Rule is designed to prevent.

Alston relies on United States v. Whitmore, 359 F.3d 609, 621-22 (D.C. Cir 2004), where the appellate court reversed a conviction because the district court erred in limiting defense counsel's cross-examination of government witnesses. That case is readily distinguishable. One limitation complained of involved an allegation of the witness having previously lied under oath—an instance of specific misconduct remarkably more probative of truthfulness than Detective Napier's alleged misconduct. Also in that case, a judge had opined on the record in a previous case that the judge believed the witness had lied under oath—a much firmer basis upon which defense counsel could justify cross-examination than the basis offered by Alston's counsel in his offer of proof. Other improper limitations of cross-examination in Whitmore involved a police officer's failure to report his suspended driver's license to his superiors and his failure to pay child support. The district court limited the cross-examination because defense counsel had no admissible evidence upon which to base his belief that the officer committed the misconduct. Yet, counsel possessed a government document showing the officer had lost his driver's license, and the court of appeals noted that document satisfied "the general rule in such situations . . . that the questioner must be in possession of some facts which support a genuine belief that the witness committed the offense or the degrading act to which the question relates." Id. at 622 (quotation marks omitted). Here, there was no such document and no such facts. Based on the foregoing, the district court did not abuse its discretion in excluding the proffered cross-examination under Rule 608(b).

IV.

Alston argues that the district court erred in fining him $5,000 without assessing his ability to pay the fine. The district court judge did consider Alston's ability to pay

a fine, however, as the district court explicitly held that Alston did not have the ability to pay a fine within the United States Sentencing Guidelines (USSG) advisory range of $20,000 to $9,000,000. The court also referenced Alston's ability to work while in prison, and the court established an installment schedule for payment of the fine. We find no clear error. See United States v. Wright, 540 F.3d 833, 847 (8th Cir. 2008) (reviewing fine for clear error and affirming $25,000 fine for indigent appellant sentenced to be incarcerated for life), cert. denied, 129 S. Ct. 2377 (2009).

Alston makes a similar yet distinct argument that the district court failed to consider the burden that a $5,000 fine would place on Alston's dependants. Alston correctly points out that USSG § 5E1.2(d)(3) directs sentencing courts to consider the burden any fine will place on the defendant's dependants. Yet, Alston did not object to the trial court's failure to consider that particular factor. Thus, we review for plain error. See United States v. Vaughn, 519 F.3d 802, 804 (8th Cir. 2008) ("If a defendant fails to object timely to a procedural sentencing error, the error is forfeited and may only be reviewed for plain error."), cert. denied, 129 S. Ct. 998 (2009). "Under plain error review, [Alston] must show: (1) an error; (2) that is plain; and (3) that affects substantial rights." See id. Most importantly for purposes of this appeal, Alston must demonstrate a reasonable probability, based on the entire record, that the district court would have levied a more favorable sentence absent the alleged error. See id. at 805. He has demonstrated no such probability. The district court allowed Alston to pay the $5,000 fine at the rate of the greater of $25 per quarter or ten percent of his quarterly income. Alston has not shown why the district court would have altered his sentence based on the burden placed on Alston's dependants by Alston's obligation to pay $25 per quarter.[7]

_____

[7]Alston's required payments will only exceed $25 per quarter if ten percent of Alston's income at some point exceeds $25 per quarter. At such a time Alston will be making more than $250 per quarter and paying only ten percent toward his fine, leaving ninety percent of his income to satisfy his obligations to his dependants.

The sole case relied upon by Alston, <u>United States v. Hines</u>, 88 F.3d 661 (8th Cir. 1996), does not demand a different result. In <u>Hines</u>, "[c]ounsel for Hines argued that the court must consider the needs of Hines's new wife and stepson" in sentencing him, <u>id.</u> at 662, thus avoiding the burdens of plain error review applicable in Alston's case. Further, in that case the district court explicitly rejected defense counsel's request to consider Hines's dependants. Also, the fine at issue in <u>Hines</u> was of a much greater amount, "greatly exceed[ing] Hines's ability to pay," <u>id.</u> at 663, and the district court "made the entire fine payable immediately," <u>id.</u> at 662. Thus, <u>Hines</u> is distinguishable in both its historical and procedural facts.

V.

Finally, Alston argues that the district court's imposition of a life sentence is unconstitutional because the district court, not a jury, determined the existence of Alston's prior convictions. As Alston recognizes, his argument is foreclosed by Supreme Court and circuit precedent. <u>See</u> <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998); <u>United States v. Sherman</u>, 440 F.3d 982 (8th Cir. 2006).

VI.

Accordingly, the judgment of the district court is affirmed.

_____