# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2376

_____

United States of America

*Plaintiff - Appellee*

v.

Matthew Raymond Olsson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: February 15, 2013
Filed: April 26, 2013

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury convicted Matthew Olsson of conspiracy to distribute cocaine and possession with the intent to distribute cocaine. The district court[1] sentenced him to 180 months imprisonment. Olsson now appeals, arguing that the district court erred

---

[1]The Honorable Fernando J. Gaitan, Chief Judge, United States District Court for the Western District of Missouri.

by limiting the cross-examination of three witnesses and by finding that Olsson's previous convictions qualified him as a career offender under the Sentencing Guidelines. We affirm.

## I.

Executing a search warrant, officers knocked on the front door of Apartment B at 5321 Ponderosa in Columbia, Missouri, around 9:00 a.m. on September 13, 2010. Nobody answered. Expecting to discover Michael Walker, officers found him in a downstairs bedroom after forcibly entering the apartment. But, unexpectedly, officers also found Matthew Olsson upstairs. The officers secured Walker and Olsson and searched the apartment. They found a variety of contraband, including three digital scales, over $7,000 in cash, drug-packaging materials, a burnt spoon used to ingest drugs, and cocaine. The cocaine was found in two locations: 128.88 grams in the kitchen sink and 23.23 grams in a toilet in the upstairs bathroom.

While officers were searching Apartment B, another group of officers executed a search warrant in the same building at Apartment A. There, officers found Corey Everage. He told officers that he lived in Apartment A and directed officers to cocaine and a firearm in an upstairs bedroom. Everage, Olsson, and Walker were arrested. After being given a <u>Miranda</u> warning, Olsson was interviewed. He denied living in Apartment B. He stated, however, that Walker distributed approximately one kilogram of cocaine per week.

Everage and Walker pled guilty to charges stemming from the September 13, 2010 search. A grand jury charged Olsson in a superseding indictment with two counts. Count 1 alleged that Olsson engaged in a conspiracy to distribute and possess 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Count 2 alleged that Olsson knowingly and intentionally possessed with the intent to

distribute a mixture and substance containing a detectable amount of cocaine, a violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). Olsson pled not guilty to both counts and proceeded to trial.

The government presented a variety of evidence at trial. In addition to the officers and agents who investigated Walker and arrested Olsson, the government's primary witnesses at trial were Everage and Walker. Each testified that Olsson was involved in distributing cocaine. Walker specifically discussed the amount of cocaine that he sold to Olsson. The government also introduced phone conversations between Olsson and an unknown female that were recorded while he was incarcerated pending trial. In the recordings, Olsson acknowledged that he lived with Walker for a short period, acknowledged that over 150 grams of cocaine were in the apartment, speculated about how the police identified him, and assured the female caller that he had a new drug supplier lined up.

After the government rested its case, Olsson moved for a judgment of acquittal. The district court denied the motion. Olsson presented no evidence, and the jury found him guilty on Counts 1 and 2. At sentencing, the district court found that Olsson qualified as a career offender under the Sentencing Guidelines based on his previous convictions for possession with intent to distribute a controlled substance, burglary, and promoting child pornography. Olsson's criminal history and base offense level resulted in a guideline range of 360 months to life imprisonment. The district court varied downward from the guideline range and sentenced Olsson to 180 months imprisonment for Counts 1 and 2 to run concurrently. Olsson appeals his conviction and sentence.

II.

Olsson raises two issues on appeal: (1) the district court improperly limited the cross-examination of government witnesses and (2) the district court erred by finding that his prior convictions qualify as crimes of violence for sentencing purposes.

A.

According to Olsson, the district court should not have limited the cross-examination of Everage, Walker, or Deputy Brandon Weber. We review a trial court's decision to limit cross-examination for a "clear abuse of discretion" and require that the defendant demonstrate he was prejudiced. United States v. Dale, 614 F.3d 942, 957 (8th Cir. 2010). Further, trial judges are given "wide latitude" when imposing reasonable limits on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). For a defendant to establish a Confrontation Clause violation, he must show that "a reasonable jury might have received a significantly different impression of [a witness's] credibility had . . . counsel been permitted to pursue [the] proposed line of cross-examination." Id.

1.

At trial, Olsson attempted to depict Walker as untruthful. Federal Rule of Evidence 608(b) provides that the court may allow specific instances of a witness's conduct "to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness." According to Olsson, the district court limited five lines of questioning that violated his rights under the Confrontation Clause. Olsson's attorney: (1) asked Walker if he told people he was a drug dealer; (2) questioned Walker regarding lying to his parole officer; (3) asked Walker if he knew that Olsson

was adopted by wealthy parents; (4) questioned Walker's prior statements regarding testimony about the quantity of cocaine he sold to Olsson; and (5) asked if Walker was involved in a shooting incident.

During direct-examination, Walker testified that he had previously been convicted of a felony drug offense, lived with Olsson in Apartment B, and sold Olsson large quantities of cocaine. Additionally, Walker testified that he pled guilty in this matter and conceded that although the government's attorney had not made any promises, he hoped testifying against Olsson would result in a reduced sentence.

First, Olsson's attorney asked Walker on cross-examination: "Did you go around telling people you were a coke dealer?" The government made a relevance objection. At the bench, Olsson's attorney attempted to justify the question, stating "I assume he's probably lied to his parole officers about having a job." The district court sustained the government's objection. The district court instructed counsel that "[u]nless you have some evidence to back up what he said that he is indeed lying, I'm not going to allow you just to randomly ask that." Further, the district court stated: "I'm not going to allow you to go on a fishing expedition for which you have nothing to substantiate it with. If you don't have anything to substantiate it with, don't ask it." Back in open court, Olsson's attorney also asked Walker if he had gotten "in any trouble with [his] parole officer" for not having a job. The government renewed its earlier objection, and it was sustained.

To pursue either line of questioning, the attorney needed to provide "some facts which support a genuine belief that the witness committed the offense or the degrading act to which the question relates." See United States v. Alston, 626 F.3d 397, 405 (8th Cir. 2010) (internal quotation marks omitted). Here, the attorney provided no factual support for his questions. In his offer of proof, Olsson's attorney merely indicated that he felt he had the right to "explore [Walker's] general truthfulness and propensity to lie." Because Olsson's attorney had no factual basis

for the questioning, the district court did not abuse its discretion by limiting the cross-examination.

Olsson's attorney also asked Walker if Olsson "was adopted by wealthy, white parents." The government objected, arguing the question was not related to Walker's motive, bias, or the offense charged. Olsson's attorney argued that Walker's "knowledge that [Olsson] came from a pretty cushy background and is not a—he's just not somebody to be feared. It's somebody you can rat out with impunity, and I think it's very important that the jury know that." The district court sustained the objection to the question as phrased. Olsson's attorney attempted to continue this line of questioning in an effort to depict Olsson as someone who was not a violent drug dealer and, as a result, someone who would not be feared. The government objected; the attorneys approached the bench. The government's attorney contended that if this questioning continued, then the government should be able to introduce portions of a transcript from a call Walker made in jail indicating he possessed a handgun. At the end of the colloquy at the bench, Olsson's attorney decided that he would "discontinue the line of questioning." Because Olsson's attorney voluntarily ended this line of questioning, any error was harmless. See United States v. Gregory, 808 F.2d 679, 681 (8th Cir. 1987) (finding no confrontation rights violated where attorney "chose to end . . . line of cross-examination").

Next, Olsson argues that the district court should not have limited his attorney's cross-examination regarding what he alleged were Walker's previous, conflicting statements that Olsson sold "four ways."[2] On cross-examination, Walker testified that Olsson typically sold user-quantity amounts of cocaine at bars, but would occasionally sell four ways. On redirect, the government's attorney reminded Walker that on two separate occasions Walker told law enforcement officers that

---

[2]A "four way" is a 4.5 ounce quantity of cocaine. According to Walker, it is an amount of cocaine purchased to resell, not to consume.

-6-

Olsson sold four ways. On recross-examination, Olsson's attorney asked: "You're not saying [Olsson] sold mostly four ways, are you?" Walker responded: "No, he didn't sell mostly four ways." Olsson's attorney rephrased the question and asked it again. At this point, the government's attorney objected, arguing that the questioning was becoming repetitive and argumentative. The district court sustained the objection, finding "it's getting repetitive."

Olsson's attorney achieved his objective: Walker admitted that Olsson did not primarily sell four ways, the higher, dealer-quantity amount of cocaine. The district court limited the cross-examination after Olsson's attorney repeatedly pursued the same question after Walker had answered. District courts "retain wide latitude" to impose limits on cross-examination to avoid repetitive testimony. Van Arsdall, 475 U.S. at 679. Olsson's attorney made the point. Walker answered at least four times that Olsson did not mostly sell four ways, and the district court did not abuse its discretion by limiting the questioning.

Finally, part of Olsson's defense was that Walker was testifying against him because of Olsson's refusal to provide a false alibi for Walker in an unrelated shooting. Olsson's attorney asked Walker: "[W]ere you involved in a shooting incident about a week prior to this?" The government objected. During a bench conference, Olsson's attorney stated that if his client chose to testify, Olsson would testify that Walker asked Olsson to provide an alibi for the shooting. The district court responded: "When your client gets on and testifies, you can call him back and do that."

Olsson argues the district court's limitation violated his Sixth Amendment rights by prohibiting him from exposing that Walker was lying after Olsson refused to provide Walker a false alibi. "[P]rohibiting a criminal defendant from exploring a witness's motive to lie violates the Sixth Amendment." Dale, 614 F.3d at 957. Therefore, the "touchstone of our inquiry" for Sixth Amendment purposes is whether

-7-

Olsson was given an "adequate opportunity to impeach the credibility of" Walker. See id. Olsson's attorney subjected Walker to a wide-ranging cross-examination. Walker admitted to his involvement in a multitude of illegal activities from distributing large amounts of cocaine to income tax evasion, and conceded that he was testifying against Olsson with the hope that it would result in a more lenient sentence. In light of Walker's admissions, we cannot conclude that attributing another misdeed to Walker would have discredited him to a degree that would have resulted in a reasonable jury receiving a "significantly different impression" of his credibility. See id. (holding district court did not abuse its discretion by limiting testimony on an unrelated murder because the defendant elicited testimony from the adverse witness that he was seeking favorable treatment for his testimony). As a result, Olsson cannot demonstrate reversible error.[3]

Olsson also contends that this line of questioning was permitted by Rule 608. Rule 608, however, allows the district court to avoid "mini-trials on peripherally related or irrelevant matters" by entrusting the probative value of testimony regarding prior misconduct to the discretion of the trial court. Alston, 626 F.3d at 403-04. Olsson's attorney sought to pursue an unrelated shooting for the purpose of discrediting Walker. The possible damage to Walker's credibility must be weighed, however, against the benefit of avoiding a separate, collateral trial on the shooting; when applying Rule 608(b), a "court balances a question's relevance to honesty and veracity with its prejudicial impact." See United States v. Dennis, 625 F.2d 782, 798 (8th Cir. 1980). Reviewing the record, the district court limited the cross-examination in this area to avoid a separate trial on an unrelated shooting. But even if we were to assume that this was an abuse of discretion, as we have explained, Olsson cannot demonstrate prejudice.

_____

[3]Because Olsson cannot demonstrate prejudice, we do not address the district court's finding that Olsson would have had to testify before his attorney could question Walker regarding the false alibi or whether Olsson established a sufficient factual basis for the question.

2.

The district court also limited the cross-examination of Corey Everage. On cross-examination, Everage admitted that he lied to an officer when he was interviewed the day of his arrest because it was in his best interest. Olsson's attorney asked Everage why he had nine felony arrests, but only three convictions, attempting to depict Everage as someone who had testified against others in the past. The district court sustained the government's objection to the question. Once the question was rephrased, Everage conceded that while he had never testified against another individual before Olsson's trial, he had provided information to law enforcement on one occasion, and as a result, he had a reputation as a snitch.

Olsson contends the district court abused its discretion by limiting the cross-examination of Everage regarding his previous arrests because discrediting Everage was critical to his defense. Exposing a witness's motivations is a "proper and important function" of the right to cross-examination, but "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Van Arsdall, 475 U.S. at 678-79 (internal quotation marks omitted). The cross-examination accomplished its objective. It depicted Everage as a lying criminal who would cooperate with the government and testify against another when it benefitted him. Moreover, this corroborated Walker's earlier testimony that he did not find Everage to be honest and that Everage had a reputation as a snitch. Olsson was given the opportunity for an effective cross-examination, he elicited the damaging testimony he sought, and, as a result, the district court did not abuse its discretion by placing reasonable limitations on the scope of the cross-examination.

3.

Deputy Brandon Weber, a member of the drug unit in the Boone County Sheriff's Department, testified that he applied for the search warrants for Apartment A and Apartment B at 5321 Ponderosa in Columbia, Missouri. Weber described executing the warrant, the drugs and contraband seized at Apartment B, and the layout of the apartment.

On cross-examination, Olsson's attorney began questioning Weber about the affidavit that was the basis for the search warrants. The government's attorney requested that the attorneys approach the bench. They did, and the district court asked Olsson's attorney what he was intending to establish. Counsel replied that he wanted to probe whether the government "had any evidence beforehand that [his] client was involved." The district court sustained the government's objection, reasoning that "[i]t didn't matter what they were looking for. It matters what they found."

Next, in open court, Olsson's attorney asked Weber if he had "any information beforehand that Matthew Olsson was going to be present at the house." Weber responded that he did not, and the court told Olsson's attorney he was "getting into the area" on which the district court just ruled adversely. Out of the presence of the jury, Olsson's attorney made an offer of proof regarding the line of questioning. He stated that the information in the affidavit showed that Everage had nine felony arrests and three convictions. Further, the lack of evidence in the affidavit pertaining to Olsson indicated that there was no expectation that Olsson lived in the apartment. After hearing the offer of proof, the district court reaffirmed its earlier ruling.

The next day, the district court again heard arguments from Olsson's attorney on this issue. According to counsel, the fact that Olsson was not mentioned in the affidavit after a thorough and exhaustive investigation demonstrated that he did not

live at the residence, a fact important to Olsson's theory of the case. Second, the testimony in the affidavit concerning Walker and Everage's prior bad acts showed their propensity to lie. The district court found that the attorney "already asked [Weber] about whether or not Mr. Olsson was referenced in the affidavit and responded accordingly. That's as far as you're going with that. If you want some more information on this, then you have to take it up with the witnesses."

We conclude, again, that Olsson's attorney elicited the information that he sought. Weber conceded that before executing the warrant he did not have any information indicating that Olsson would be found at Apartment B. Thus, Olsson was not only given the opportunity for an effective cross-examination of Weber, see Van Arsdall, 475 U.S. at 679, but accomplished the goal of establishing that Weber did not believe Olsson lived at Apartment B before the warrant was executed. Olsson's attorney attempted to use the affidavit to introduce Everage's and Walker's previous bad acts, but testifying after Weber, they admitted their previous convictions under cross-examination. Olsson does not explain how he was prejudiced when the information he sought was introduced directly through Walker and Everage. Here, Olsson "had other ways to obtain the effect that the excluded examination would have allegedly established," and, therefore, the district court's limitation did not violate his rights under the Confrontation Clause. See United States v. Hall, 171 F.3d 1133, 1146 (8th Cir. 1999) (internal quotation marks omitted).

4.

Finally, Olsson argues that any error must be considered cumulatively and justifies a new trial. This court "will not reverse based upon the cumulative effect of errors unless there is substantial prejudice to the defendant, and we have declined to apply the doctrine when the evidentiary rulings are within the trial court's discretion." United States v. Gladfelter, 168 F.3d 1078, 1083 (8th Cir. 1999) (internal citation omitted). As explained, although the trial court limited aspects of cross-examination,

there was no "substantial prejudice"to Olsson. His attorney procured the testimony he sought in almost every instance, and ample evidence supports the convictions.

## B.

Olsson's last argument on appeal is that the district court erred by finding that he was a career offender under the Sentencing Guidelines. Olsson contends that his prior convictions for burglary and promoting child pornography do not qualify as "crimes of violence" for purposes of determining whether he is a career offender under section 4B1.1 of the Sentencing Guidelines. He concedes, however, that his prior conviction for possession with intent to distribute a controlled substance is a "controlled substance offense" under the guidelines. As a result, if either his burglary or child pornography conviction qualifies as a "crime of violence," he is a career offender. See United States Sentencing Commission, Guidelines Manual, §4B1.1(a) (Nov. 2012) (requiring that "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense").

Olsson contends that his conviction for second-degree burglary does not constitutes a "crime of violence" because he burglarized a commercial building outside of regular business hours. Our prior holdings foreclose this argument, however, because we have previously "conclude[d] that commercial burglary is a crime of violence." United States v. Bell, 445 F.3d 1086, 1088 (8th Cir. 2006) (holding commercial burglary conviction under the same Missouri statute qualified as a crime of violence).[4] Accordingly, we agree with the district court that Olsson's

---

[4]Olsson argues the Supreme Court's decision in Begay v. United States, 553 U.S. 137 (2008) overruled Bell. Olsson's interpretation of Begay was previously addressed by United States v. Stymiest, 581 F.3d 759, 769 (8th Cir. 2009) ("[W]e conclude that our prior decisions classifying generic burglaries of structures other than 'dwellings' as crimes of violence under the 'otherwise involves' provision of § 4B1.2(a)(2) were not implicitly overruled by Begay.").

second-degree burglary conviction constitutes a crime of violence for purposes of section 4B1.1(a). Thus, because Olsson conceded that he has a prior conviction for a controlled substance offense, he has at least two qualifying prior convictions under section 4B1.1(a). Therefore, we need not address whether Olsson's child pornography conviction constitutes a crime of violence, and we affirm the district court.

## III.

Accordingly, we affirm Olsson's conviction and sentence.

_____