UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

No. 12-4175

—————————

UNITED STATES OF AMERICA,

 Plaintiff – Appellee,

 v.

JAMES HARRIS, a/k/a James Davon Harris,

 Defendant – Appellant.

—————————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  William D. Quarles, Jr., District
Judge.  (1:11-cr-00187-WDQ-1)

—————————

Argued:  October 31, 2013            Decided:  January 15, 2014

—————————

Before WILKINSON, DUNCAN, and DIAZ, Circuit Judges.

—————————

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion,
in which Judge Wilkinson and Judge Duncan joined.

—————————

**ARGUED:** Steven Hale Levin, LEVIN & CURLETT LLC, Baltimore,
Maryland, for Appellant.  Michael Clayton Hanlon, OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON
BRIEF:** Rod J. Rosenstein, United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

—————————

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

A jury convicted James Harris of conspiracy to distribute cocaine and possession with intent to distribute cocaine. He was sentenced to 210 months' imprisonment. On appeal, Harris argues that the district court erred in denying his motion to dismiss the indictment on the basis of unconstitutional delay, and in granting the government's motion in limine to limit cross-examination of the police officers involved in his arrest. He also challenges the substantive reasonableness of his sentence. For the reasons that follow, we affirm.

I.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the government." United States v. Smith, 701 F.3d 1002, 1004 (4th Cir. 2012).

A.

On September 17, 2008, while on undercover assignment for the Baltimore Police Department, Officer Trabian Smith was walking down West Fairmount Avenue in Baltimore when he was approached by a man later identified as Gordon Gingles. Gingles asked Smith what he was looking for, and Smith replied with a street term for crack cocaine. Gingles then directed Smith to Harris, who was standing nearby. Smith approached Harris, and Harris asked Smith what he needed. After Smith replied "two,"

2

Harris directed Markita Cook, who was sitting on the steps of the adjacent house, to "get him two." J.A. 374. Cook went into the house, and Harris told Smith to wait around the corner.

Shortly thereafter, Cook approached Smith and handed him two black-top vials that were later determined to contain crack cocaine. In exchange, Smith gave Cook two ten-dollar bills. Smith then left the area and contacted an arrest team. The arrest team, which included Detectives Angela Choi and Jared Fried, subsequently arrested Harris and Cook. Choi and Fried, along with other officers, later returned to the house armed with a search warrant, where they found a woman named Ashley Sparrow. The officers briefly detained Sparrow, but ultimately released her. Inside the house, officers found black-top vials (identical to the ones Cook provided to Smith), ziplock bags, and a gun.

### B.

Maryland prosecutors charged Harris in state court with narcotics and firearms offenses. After Harris's case had been pending for approximately seven months, prosecutors placed it on the so-called "stet" docket, allowing it to remain dormant indefinitely. Around the same time, Harris was found to have violated the conditions of his probation from an earlier conviction, and his probation term was extended for an additional year. On March 1, 2010, near the end of Harris's

3

extended probation term, state prosecutors reactivated the dormant charges. But after several subsequent postponements, the case was dismissed.

Around the time the state charges were dismissed, state prosecutors referred Harris's case to the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "ATF").[1] The ATF reviewed the case and filed a criminal complaint against Harris on February 1, 2011. A grand jury indicted Harris on March 31, 2011, for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). On May 10, the grand jury returned a superseding indictment, adding a charge for conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846.

C.

While awaiting trial, Harris moved to dismiss the indictment. He argued that the 29-month delay between his September 17, 2008, arrest and the initiation of federal charges violated both his Fifth Amendment due process right and his Sixth Amendment speedy trial right. Harris also subpoenaed

---

[1] In a hearing before the district court, counsel for the government stated that he was not sure exactly when state prosecutors referred the case to the ATF, but that it was not until after the state case "had suffered some kind of fatal problem." J.A. 69. In any event, counsel stated that he "[did not] think it was as early as March 2010." Id.

4

disciplinary records for the Baltimore police officers involved in his arrest, seeking information regarding prior allegations of misconduct made against them. Harris intended to use these allegations as impeachment evidence on cross-examination of the officers at trial. The government filed a motion in limine to prevent Harris from questioning the officers about the records.

The district court denied Harris's motion to dismiss and granted the government's motion in limine. The court concluded that Harris's Fifth Amendment right had not been violated, as he failed to demonstrate that he was prejudiced by pre-indictment delay, and there was no indication that the delay was due to an impermissible reason. The court also explained that Harris's Sixth Amendment right was not implicated until the initiation of federal charges, and that the brief period of delay between the return of the federal indictment and the beginning of Harris's trial did not violate the Sixth Amendment.

With respect to the government's motion in limine, the district court determined that only a minority of the complaints detailed in the disciplinary records had been sustained upon investigation. And because none of the sustained complaints involved misconduct related to untruthfulness, they were not admissible under Federal Rule of Evidence 608(b). Although some of the unsustained accusations in the records might have related to untruthfulness, the court did not consider them probative of

5

the officers' credibility, and it expressed concern that admitting them would "sidetrack[]" the trial with a "mini-trial" on their veracity. United States v. Harris, No. WDQ-11-0187, 2011 WL 2413771, at *6 (D. Md. June 8, 2011) (internal quotation marks omitted).

A jury convicted Harris on both counts. At sentencing, the district court determined that Harris was a career offender under U.S. Sentencing Guidelines § 4B1.1, based on his prior state convictions for robbery and attempted murder. This enhancement increased Harris's offense level from 12 to 32. Combined with a criminal history category of VI, it resulted in an advisory Guidelines range of 210 to 262 months' imprisonment. Harris requested a downward variance, noting that his prior convictions occurred when he was a juvenile and that he had been abused as a child. Rejecting Harris's request, the district court sentenced him to 210 months' imprisonment, at the low end of the Guidelines range.

Harris timely noted this appeal.

II.

A.

We first consider Harris's argument that the district court erred in denying his motion to dismiss the indictment due to violations of his Fifth and Sixth Amendment rights. On appeal

6

from a motion to dismiss an indictment, we review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Brehm, 691 F.3d 547, 550 (4th Cir. 2012).

1.

The Fifth Amendment's Due Process Clause requires dismissal of an indictment if delay prior to the indictment "caused substantial prejudice to [the defendant's] rights to a fair trial" and "was an intentional device to gain tactical advantage over the accused." United States v. Marion, 404 U.S. 307, 324 (1971). To prevail on a due process claim based on pre-indictment delay, a defendant must first demonstrate that the delay resulted in "actual prejudice." United States v. Automated Med. Labs., Inc., 770 F.2d 399, 403 (4th Cir. 1985). If this requirement is met, we then "balance[] the prejudice to the defendant with the Government's justification for the delay," to determine whether the government's action "violate[d] fundamental conceptions of justice or the community's sense of fair play and decency." Id. at 404 (internal quotation marks omitted).

To demonstrate prejudice, Harris argues that two witnesses he would have called at trial--Ashley Sparrow and an individual known as "Ray"--were unavailable as a result of pre-indictment delay. We have previously recognized that the unavailability of

7

a witness may be a source of prejudice, but have explained that succeeding on such a claim requires the defendant to carry a heavy burden. See Jones v. Angelone, 94 F.3d 900, 907-08 (4th Cir. 1996). The defendant must "identify the witness he would have called; demonstrate, with specificity, the expected content of that witness'[s] testimony; establish to the court's satisfaction that he has made serious attempts to locate the witness; and, finally, show that the information the witness would have provided was not available from other sources." Id. at 908. At bottom, the defendant must demonstrate, beyond mere speculation, that "he was meaningfully impaired in his ability to defend against the . . . charges to such an extent that the disposition of the criminal proceeding was likely affected." Id. at 907.

According to Harris, Sparrow "gave a statement to defense investigators indicating that [Harris] was not present when the undercover officer bought two vials of drugs at her house." Appellant's Br. at 15. Harris thus claims that her testimony "would have corroborated the defense alibi offered at trial." Id.

Even if we accept this characterization of Sparrow's expected testimony, her absence does not establish prejudice for purposes of Harris's Fifth Amendment claim. Harris has not provided any explanation as to why Sparrow is unavailable, and

8

Harris's counsel's statements before the district court indicate that he is simply unable to locate her. But given that an investigator for Harris's counsel previously interviewed Sparrow, it does not appear that Harris lost track of Sparrow until sometime <u>after</u> he was indicted. Accordingly, any pre-indictment delay did not "cause[]" Sparrow's unavailability. See <u>Marion</u>, 404 U.S. at 324.

As for "Ray," who apparently died prior to Harris's federal indictment, Harris fails to make the showing required by <u>Jones</u>. According to Harris, Ray was inside the house with Sparrow at the time the Baltimore police officers conducted the search. Importantly, however, Harris does not explain how Ray's testimony would have aided his defense, and Harris does not even know Ray's real name. Before the district court, Harris's counsel could only speculate as to what information Ray could provide. Because Harris has not "demonstrate[ed], with specificity, the expected content of [Ray's] testimony," <u>Jones</u>, 94 F.3d at 908, Ray's unavailability does not constitute prejudice. Having failed to demonstrate prejudice, Harris has not established a violation of the Fifth Amendment.

## 2.

Nor did any delay in this case violate Harris's Sixth Amendment right. The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a

9

speedy and public trial."  The Sixth Amendment right to a speedy

trial "does not apply to . . . pre-indictment delay," as it

"does not attach until the defendant has been indicted or

arrested."  Jones, 94 F.3d at 906 n.6.  In assessing whether the

defendant's speedy trial right was violated, we consider four

factors articulated by the Supreme Court in Barker v. Wingo: (1)

the "length of the delay"; (2) "the reason for the delay"; (3)

"the defendant's assertion of his right"; and (4) the "prejudice

to the defendant."  407 U.S. 514, 530 (1972).

With respect to the "length of delay," only an arrest or

indictment on federal charges starts the speedy trial clock.

See United States v. MacDonald, 456 U.S. 1, 10 n.11 (1982); see

also  United States v. Garner, 32 F.3d 1305, 1309 (8th Cir.

1994) ("The arrest on state charges does not engage the speedy

trial protection for a subsequent federal charge.").  Harris

concedes that this rule is "well established."  Appellant's Br.

at 10.  But, emphasizing the 29-month period between his arrest

on state charges and his federal indictment, he urges us "to

apply a more expansive definition of 'federal charges' to

include time spent in prison on state charges that were

ultimately dropped and re-crafted as federal charges."  Id.

In support of this admittedly "novel argument," id., Harris

cites United States v. Woolfolk, in which we suggested that

speedy trial protections "can be triggered by something other

10

than actual federal custody and federal arrest, i.e., any restraint resulting from federal action." 399 F.3d 590, 596 (4th Cir. 2005) (internal quotation marks omitted). Unlike in Woolfolk, however, Harris does not suggest that the federal government knew--or even should have known--that he was being held on state charges prior to his case being referred to federal authorities. Nor has Harris produced any evidence of an improper motive on behalf of state or federal officials. Woolfolk is therefore inapposite, and, consistent with MacDonald, we conclude that Harris's speedy trial right did not attach until the initiation of federal charges.

The ATF filed a criminal complaint against Harris on February 1, 2011. Because Harris's trial began on June 6, 2011, the relevant period of delay is at most four months. We have previously explained that the first Barker factor--length of delay--"acts as a threshold requirement." United States v. Grimmond, 137 F.3d 823, 827 (4th Cir. 1998); see also Barker, 407 U.S. at 530 (describing the first factor as a "triggering mechanism"). "If the delay is not uncommonly long, the inquiry ends there." Grimmond, 137 F.3d at 827. Because we do not consider a four-month delay between the filing of charges and the initiation of trial uncommonly long--indeed, it falls well short of the one-year period that courts generally deem "presumptively prejudicial," Doggett v. United States, 505 U.S.

11

647, 652 n.1 (1992)--we need not consider the remaining <u>Barker</u> factors. <u>See</u> <u>Barker</u>, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."). Given the brevity of the delay in this case, we conclude that Harris's right to a speedy trial was not violated.

B.

Next, Harris argues that the district court erred in granting the government's motion in limine to preclude him from cross-examining the Baltimore police officers involved in his arrest about their disciplinary records. We review the district court's evidentiary rulings for abuse of discretion. <u>United States v. Hornsby</u>, 666 F.3d 296, 307 (4th Cir. 2012).

In arguing that the allegations of "brutality, false arrest, and excessive force" contained in the records should have been a permissible subject for cross-examination, Harris relies on Federal Rule of Evidence 608(b). Appellant's Br. at 16. That Rule permits the introduction of "specific instances of conduct" on cross-examination only if such evidence is "probative" of a witness's "character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). In considering whether the disciplinary records meet this criterion, we are mindful that "the trial court has wide discretion to decide whether (and to what extent)" cross-examination about specific instances of

12

conduct "is proper and relevant." <u>United States v. Smith</u>, 451 F.3d 209, 223 (4th Cir. 2006).

Harris's brief identifies five allegations contained in the disciplinary records that he contends should have been permissible fodder for cross-examination:[2] (1) that Officer Smith, who conducted the drug buy, once "punched an arrestee in the mouth and knocked out his tooth"; (2) that Officer Smith made a "false arrest" by telling an arrestee that he would not have been arrested had he not been with another suspect; (3) that Detective Fried, one of the officers who arrested Harris, "beat[] up a prisoner"; (4) that Detective Fried "plant[ed] evidence on a suspect"; and (5) that Detective Choi, the other officer who arrested Harris, once made a "false arrest" without probable cause. Appellant's Br. at 16-17.

Of course, not every instance of officer misconduct is "probative" of an officer's "character for truthfulness or untruthfulness." <u>See</u> Fed. R. Evid. 608(b). Rather, the Rule authorizes inquiry only into instances of misconduct akin to "perjury, fraud, swindling, forgery, bribery, and embezzlement[.]" <u>United States v. Leake</u>, 642 F.2d 715, 718 (4th Cir. 1981). And other courts have rejected the notion that more

---

[2] The disciplinary records themselves are not in the record on appeal. Thus, we rely on the district court's description of them, which Harris has not disputed.

general police misconduct, such as excessive force, falls within the Rule's scope. See, e.g., United States v. Alston, 626 F.3d 397, 404 (8th Cir. 2010) (affirming the district court's exclusion of findings that an officer "engaged only in ridiculing or taunting a prisoner" due, in part, to the danger of prejudice from introducing "sanctions completely unrelated to the witness'[s] character for truthfulness"); United States v. Seymour, 472 F.3d 969, 970 (7th Cir. 2007) (stating that an officer's use of excessive force "was not probative of his truthfulness"); United States v. Adams, Nos. 99-1563, 99-1596, 2000 WL 777970, at *2 (2d Cir. Jun. 15, 2000) (affirming the district court's exclusion of excessive force allegations against an officer because they "were not sufficiently probative of . . . truthfulness"). Thus, with respect to the allegations in the disciplinary records involving only brutality or excessive force, we agree with the district court that they were simply not admissible under Rule 608(b).

As for the allegations involving what Harris characterizes as "false arrest[s]" and "planted evidence," Appellant's Br. at 16-17, the district court correctly observed that the records include only "mere accusations," rather than findings, of "misconduct based on untruthfulness." Harris, 2011 WL 2413771, at *6. Mere accusations of prior misconduct inherently have little probative value. They are, after all, "both unproven and

14

unconnected to th[e] [instant] case." United States v. Custis, 988 F.2d 1355, 1359 (4th Cir. 1993). As such, they naturally pose a risk of misleading the jury, given "the danger . . . that a jury will infer more from the previous investigation than is fairly inferable." Alston, 626 F.3d at 404.

While allowing the government to respond to the accusations or to introduce contextual evidence might curb this danger, these accommodations would likely result in further confusion of the issues or "the kind of mini-trial on a peripherally related matter that [Rule 608(b)] is designed to prevent." See id.; see also Custis, 988 F.2d at 1360 & n.1 (noting the danger that a trial might be "sidetracked by a mini-trial" on the veracity of unproven allegations against police officers). Exclusion of accusations of prior misconduct thus lies within the district court's "wide latitude . . . to impose reasonable limits on . . . cross examination based on concerns about, among other things, harassment, prejudice, confusion of the issues . . . or interrogation that is . . . only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

Here, the district court reasonably concluded that the accusations in the disciplinary records, while perhaps potentially relating to the officers' character for untruthfulness, had little probative value and posed a risk of "sidetrack[ing]" the trial. Harris, 2011 WL 2413771, at *6. We

15

therefore hold that the district court did not abuse its discretion in excluding them from the scope of permissible cross-examination.

C.

Finally, Harris challenges the substantive reasonableness of his sentence. In reviewing a sentence for substantive reasonableness, we "examine[] the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in [18 U.S.C.] § 3553(a)." United States v. Mendoza-Mendoza, 597 F.3d 212, 216 (4th Cir. 2010). Where, as here, the sentence is within the properly calculated Guidelines range, we apply a presumption of substantive reasonableness. See United States v. Johnson, 445 F.3d 339, 341 (4th Cir. 2006).

In arguing that his sentence was not substantively reasonable, Harris identifies three mitigating factors that he contends justified a reduced sentence. First, he argues that application of the career-offender enhancement was "overly punitive" because it added 189 months to his Guidelines range based on convictions for crimes he committed as a juvenile. Appellant's Br. at 20-21. Second, he points to his lack of family support, noting that "his father was terribly abusive and brutally beat him as a child," and that his brother "was murdered at a young age." Id. at 20. Lastly, Harris notes that

16

"the sale of $20.00 of cocaine is much less significant than the crimes of major dealers selling large quantities of drugs," and argues that he "was not a big player in a significant drug conspiracy." Id. at 21.

We have thoroughly reviewed the record and conclude that Harris's sentence is substantively reasonable. The district court heard and addressed each of Harris's mitigation arguments, and clearly explained its reasoning for imposing a within-Guidelines sentence of 210 months. With reference to the relevant § 3553(a) factors, the district court noted the serious harm that drug crimes inflict on the community, the violent nature of Harris's prior convictions,[3] and his multiple probation violations. Based on these considerations, and given the presumption of reasonableness that attaches to a within-Guidelines sentence, we find no abuse of discretion in the district court's imposition of a sentence at the low end of the Guidelines range.[4]

---

[3] According to the district court, the facts underlying Harris's robbery conviction were that he "punched one victim in the face and shot another in the arm and fired several more shots at the victims as he fled." J.A. 2010. The attempted murder conviction rested on Harris having "shot a victim in a leg, left arm, stomach, chest, and chin, as th[e] victim begged for his life." Id.

[4] In a Rule 28(j) letter filed shortly before argument, Harris noted that, contrary to the district court's expectation, a state court eventually sentenced him to seven years of "back-
(Continued)

17

III.

For the reasons above, we affirm the district court's judgment.

AFFIRMED

---

up" prison time due to his state probation violation. According to Harris, this additional prison time further supports his argument that his federal sentence was substantively unreasonable. We disagree. Although the district court did express skepticism that Maryland would require Harris to serve additional prison time for the probation violation, the court did not indicate that the sentence it imposed depended on that assumption. To the contrary, the court explicitly referred to the possibility of state back-up time when providing its rationale for applying the career-offender enhancement, noting that any such time was a result of Harris's "serious" prior conviction. J.A. 1006. We do not believe this additional time, attributable to the state conviction, renders Harris's federal sentence unreasonable.